Dear Mr. Smith:
You requested an opinion of this office pertaining to the following issues:
 1. Can Southeastern Louisiana University (SLU) legally deny a student admission into our program based upon her inability to pass the speech and hearing admission criteria of "Selective Admission and Retention in Teacher Education" (SARTE)?
 2. What, if any, accommodations or adjustments are we required to make in our program and/or course requirements, etc. to accommodate a student with this disability?
Your concerns raise constitutional issues as well as issues pertaining to the Rehabilitation Act of 1974 which will be addressed separately.
In your opinion request you stated that SLU's professional teacher education program required that all students pass a speech and hearing test to achieve "full" status. As to the discriminating effect of this requirement on handicapped persons, its constitutionality raises both equal protection and due process questions.
For purposes of equal protection challenges, activities which discriminate will be scrutinized using the "rational basis" test unless a suspect class is disproportionately affected or a fundamental right is infringed. In City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 105 S.Ct. 3249,87 L.Ed.2d 313 (1985) the U.S Supreme Court held that mentally retarded persons were neither a suspect nor quasi-suspect class and thereby applied the "rational basis" test. The Supreme Court has also found that there is no constitutional or fundamental right to an education. See San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278,36 L.Ed.2d 16 (1973).
Hence, the rational basis test would be applied to determine if SLU had a legitimate governmental objective in requiring students majoring in Education to pass a speech and hearing test before "full" status could be achieved.
Due process, as applied here, pertains to an individual's liberty right to engage in a chosen profession free from unreasonable governmental interference. United States v. Lulac,793 F.2d 636 (5th Cir. 1986), Board of Regents v. Roth,408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, reasonable governmental examination is permitted, whether as a prerequisite to entrance to college, to a professional school, or to a profession. If the test is valid, requiring a student to pass it would not be demonstrably unreasonable. See Lulac supra, at 647-648. Therefore, to satisfy the constitutional requirements of substantive due process, SLU would have to show that the program requirements are not "demonstrably unreasonable" as stated in Lulac.
Under the federal Rehabilitation Act (29 U.S.C. § 794) and LSA-R.S. 40:2254, discrimination against handicapped individuals by educational institutions is prohibited. The Code of Federal Regulations (34 CFR, Section 104 et seq.) establishes criteria for the treatment of handicapped individuals in post secondary educational institutions receiving federal financial assistance. Regarding a university's academic requirements, 34 CFR, Section 104.44 states in pertinent part:
 A recipient . . . shall make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student.
However, there are limits to the "modifications" that must be made. The above provision states further:
 Academic requirements that the recipient can demonstrate are essential to the program of instruction being pursued by such student or to any directly related licensing requirement will not be regarded as discriminatory within the meaning of this section. Modifications may include changes in the length of time permitted for the completion of degree requirements, substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in which specific courses are conducted. (Emphasis supplied.)
"Essential" academic requirements would be a factual determination to be made by a trier of fact on a case by case basis. Also, the enumerated modifications are illustrative and not an exclusive list of options available to a funded university in modifying a program of study to accommodate a handicapped person.
The U.S. Supreme Court case of Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) was the first case in which the Supreme Court had been called upon to interpret the Rehabilitation Act. The facts in Davis are analogous to SLU's present situation. A seriously hearing impaired student was denied admission to a nursing program on the grounds that her disability made it "unsafe for her to practice as a nurse." The Court stated that the Rehabilitation Act "by its terms does not compel educational institutions to disregard the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled persons to participate. . . . It requires only that an `otherwise qualified handicapped individual' not be excluded from participation in a federally funded program solely by reason of his handicap."
The Davis court defined "otherwise handicapped individual," as does the federal law, as "one who is able to meet all of a program's requirements in spite of his [or her] handicap." Davis supra, at 2367. The Court also concluded that physical qualifications were not outside the realm of "reasonable" requirements students must meet to complete a school's educational program. An examination of the physical requirements mandated by the Southeastern Community College's nursing program was held to be reasonable considering that "the ability to understand speech without reliance on lipreading [was] necessary for patient safety during the clinical phase of the program." Davis supra, at 2367.
The Davis court stated that the College's purpose was "to train persons who could serve the nursing profession in all customary ways." The Rehabilitation Act "imposes no requirements upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." Nothing in the Act's history reflects an intention to limit the freedom of an educational institution to require reasonable physical qualifications for admission to a clinical training program. See Davis, at 2370-2371.
Applying the Davis court reasoning, it would appear that a college or university may require students to successfully complete certain physical tests prior to being admitted to a degree program. Handicapped persons must be able to meet all of a program's qualifications despite their disability allowing for "otherwise qualified individual" status. Educational institutions would not be required to institute changes which would require "substantial modifications" to the program ultimately graduating students who could not effectively perform in the "customary" and usual capacities which the program was designed to accomplish.
Although our office is not aware of what assistance the University can provide in attempting to accommodate handicapped students, if the University is of the opinion that the modifications to a program are "substantial", and the requirements to enter the program are mandatory for the completion of such a program, then the University would not appear to be in violation of the Rehabilitation Act (29 U.S.C. § 794).
I hope this opinion has sufficiently addressed your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: BETH A. CONRAD Assistant Attorney General
RPI/BAC:pab 0652l